**TURNER ELKHORN MINING CO., a Ky. Corporation, et al., Plaintiffs,**

v.

**Peter J. BRENNAN, Secretary of the United States Department of Labor, an Agency of the Federal Government, and**

**Caspar W. Weinberger, Secretary of the United States Department of Health, Education and Welfare, an Agency of the Federal Government, Defendants.**

**Civ. A. No. 1761.**

United States District Court,
E. D. Kentucky,
Pikeville Division.

Nov. 19, 1974.

Lord, Bissell & Brook, by Steven A. Milwid and R. R. McMahan, Chicago, Ill., Boehl, Stopher, Graves & Deindoerfer, by James M. Graves, Louisville, Ky., for plaintiffs.

William J. Kilberg, Solicitor of Labor; James G. Johnson, Associate Sol., Marble Solomons and Frank A. White, Dept. of Labor, Washington, D. C., Eugene E. Siler, Jr., U. S. Atty., E. D. Ky., Lexington, Ky., Harland F. Leathers and David Orlikoff, Attys., Department of Justice, Washington, D. C., for defendants.

MEMORANDUM OPINION

Before LIVELY, Circuit Judge, and MOYNAHAN and HERMANSDORFER, District Judges.

HERMANSDORFER, District Judge.

This action constitutes a facial attack upon the constitutionality of portions of Subchapter IV, Black Lung Benefits, of the Federal Coal Mine Health and Safety Act of 1969, Pub.L. 91–173, Dec. 30, 1969, 83 Stat. 792, as amended by the Black Lung Benefits Act of 1972, Pub.L. 92–303, May 19, 1972, 86 Stat. 150, 30 U.S.C. § 901 et seq. Plaintiffs are twenty-two (22) coal mine operators who charge the Act violates rights secured under the Fifth Amendment to the Federal Constitution. The defendants are the Secretaries of the United States Departments of Labor and Health, Education and Welfare.

▮ Jurisdiction is invoked and found under 28 U.S.C. § 2282. Such jurisdiction is limited to a consideration of the Act and does not extend to a consideration of administrative regulations. William Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (1939); Sardino v. Federal Reserve Bank of New York, 361 F.2d 106 (1966), cert. denied 385 U.S. 898, 87 S. Ct. 203, 17 L.Ed.2d 130 (1966), which are within the jurisdiction of a single judge court. Further, we consider only the facial attack made upon portions of the Act and not its implementation to any specific claim for benefits.

Perspective may be had in considering the questions presented by first noticing the general legislative plan incorporated in the Federal Coal Mine Health and Safety Act as amended. The Act is structured in terms of a preamble and five (5) major subchapters, each of which is devoted to a separate legislative concern. Our present efforts are concerned only with portions of Subchapter IV. This subchapter, denominated "Black Lung Benefits", is comprised of three (3) primary subdivisions entitled respectively "Part A—General Provisions"; "Part B—Claims for Benefits Filed On Or Before December 31, 1972"; and, "Part C—Claims for Benefits After December 31, 1972". Of these subdivisions our attention is directed to Parts B and C only.

Part B of Subchapter IV deals principally with benefits for total disability or death arising from pneumoconiosis which are to be determined and paid by the Federal Government. Eligibility and standards for processing claims are provided by sections 921 through 924. The final section in Part B, section 925, establishes a transition period, June 30, 1973 to December 31, 1973, during which federal participation as payee of benefits is phased out and state administration of liability through workmen's compensation coverage with federally approved standards, 30 U.S.C. § 931, or direct liability on coal mine operators, 30 U.S.C. § 932, is assumed.

Part C directly deals with conditions under which the Secretary of Labor will certify state workmen's compensation laws as complying with federal standards, or, if such compliance is not found, imposition of liability on the coal mine operators. In the circumstance of direct liability upon a coal mine operator, the Act specifically recognizes the requirement of an employment nexus between the coal miner or those claiming in respect of a deceased coal miner and the particular coal mine operator against whom the claim is made. Pursuant to Part C, section 932(a), liability devolves to such operator "with respect to death or total disability due to pneumoconiosis *arising out of employment in such coal mine*"; and, under section 932(c), it is provided that there is *no liability* on such operator for benefits "*due to pneumoconiosis which did not arise at least in part, out of employment in such mine during the period when it was operated by such operator*".[1] (Emphasis added)

---

1. This may include liability from a prior operator's business if such prior operator operated the coal mine on or after December 30, 1969, the effective date of the Act. The prior operator is not, however, relieved of liability by this provision. 30 U.S.C. § 932(i)(2).

Further, claims must be filed within the limitations period established by the Act. Under Part B a claim must be filed generally by December 31, 1973; the exceptions may result in an extension of six (6) months from December 31, 1973 under sections 922(a)(3), 924. Part C requires the claim to be filed within three (3) years of the discovery of total disability or of death from pneumoconiosis, section 931(b)(2)(D), except in the case of a living miner whose eligibility is established under section 921(c)(4) where the claim of miners engaged in coal mining for more than fifteen (15) years must be filed within three (3) years of the last exposure to disease employment, or in the event of death, within fifteen (15) years of the last exposure employment. 30 U. S.C. § 932(f)(1)(2).

Argument is made that the statutory scheme outlined for assessing liability on the coal mine operator for those miners no longer in the work force is irrational and amounts to reparations in favor of the coal miners against the coal industry. The rational approach, argue plaintiffs, is the workmen's compensation approach where the risk of injury or disease is insured against during the employee's period of employment and the economic burden thereby incurred is spread to the public through the pricing mechanism. To impose what plaintiffs believe will be a severe economic burden on the coal industry for total disability or death arising from periods of employment of miners when the disease has not been recognized [2] and no methods of protecting the industry from that risk were taken, is argued as constitutionally impermissible. Plaintiffs cite a multi-issue railroad pension case, Retirement Board v. Alton R. Co., 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935), which held that a requirement for interstate carriers to pay a retirement allowance to persons who were in the service within one (1) year of the Act was arbitrary and unreasonable. Mr. Chief Justice Hughes and those justices joining him in dissent did, in fact, concur in the majority's holding on that particular question. 295 U.S. 389, 55 S.Ct. 758. We hold, however, that the *Alton* decision is distinguishable. There, any person who was employed within one (1) year of the date of the Act was to be awarded benefits even though such person may have been discharged for cause or severed employment for a reason incompatible with the imposition of implied *quasi-contract* responsibility to pay such allowance for retirement. The Court in *Alton* recognized a fundamental difference between compensation type laws which deal with existing rights and liabilities and the Act there under consideration which sought to impose "a new incident, without reference to any existing obligation or legal liability", upon the employer-employee relationships. 295 U.S. at 369–371, 55 S.Ct. at 772. In the instant case the Act imposes liability upon a coal operator only if standards sounding in tort are met: (1) a claim is timely filed; (2) a prior employment nexus is established; (3) the claim is based on pneumoconiosis arising, at least in part, from such employment; and, (4) the coal miner has become totally disabled or has died from pneumoconiosis. Those factors not only distinguish *Alton, supra,* but manifest a logical and rational basis for the assertion of liability.

■ In assessing the argument against imposition of remote claims where the responsible party did not insure against that particular risk because it was unknown to the coal industry at large, we are not persuaded that fact makes the Act unreasonable. Clearly, plaintiffs have cited no binding or persuasive authority showing that such liability for remote claims violates safeguards of the Federal Constitution. This Court may not, under United States v. Carolene Products Co., 304 U. S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed.

---

2. There was testimony and information, e. g. Senator Javits, to the effect that pneumoconiosis was not recognized in the United States until the mid-1950's. 1969 Legislative History 339.

1234 (1938), superimpose its judgment on that of Congress:

". . . where the legislative judgment is drawn into question, [judicial inquiry] must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it. . . . As that decision was for Congress, neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it."

We find that the manner in which liability is assessed is rational, and the decision of Congress to impose it on what may be called remote claims of those former miners no longer in the work force was an exercise of its lawful power under the Constitution.

The statutory manner of imposing and implementing such liability as the Act imposes upon coal mine operators under the Act presents a separate and distinct issue of several parts.

■ *First,* the Act identifies a particular disease which, when manifest in an advanced state in coal miners, may cause total disability or death. There is no doubt that the Congress elected to avoid precise medical terminology in defining pneumoconiosis, section 902(b):

"The term 'pneumoconiosis' means a chronic dust disease of the lung arising out of employment in a coal mine."

No meaningful argument has been presented challenging the power of Congress to make such definition after receiving conflicting medical evidence about the disease.[3] The naming of the disease or its components in this instance is of more academic than legal significance. United States v. Carolene Products Co., *supra.* We hold the definition is neither arbitrary nor unreasonable.

*Second,* under part B of the Act at section 921(c) there are four (4) statutory presumptions made in aid of a

claimant's efforts to secure benefits. Plaintiffs have standing to attack these presumptions under section 925 where the Secretary's findings of liability during the transition are binding on the operators and, as to the last presumption, under section 932(f)(2), where it is specifically incorporated into Part C as a basis for benefit eligibility. The provisions of section 921(c) are:

"For the purposes of this section—

"(1) if a miner who is suffering or suffers from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment;

"(2) if a deceased miner was employed for ten years or more in one or more coal mines and died from a respiratory disease there shall be a rebuttable presumption that his death was due to pneumoconiosis;

"(3) if a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be; and

---

3. The committee reports abound with such conflict. A summary is presented in U.S.

Code, Cong. and Admin.News, 92d Cong., Second Session, 1972, p. 2315.

"(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's . . . claim under this title, and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of this death he was totally disabled by pneumoconiosis. . . . The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine."

■ Plaintiffs make the argument that the presumptions presented by statute are irrational and amount to de facto irrebuttable presumptions. In Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), the Court, relying upon its decision in Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910), held that the controlling test for determining the validity of a statutory presumption was "that there be a rational connection between the facts proved and the facts presumed". 319 U.S. at 467, 63 S.Ct. at 1245. The Court wrote:

"Under our decisions a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed." See Leary v. United States, 395 U.S. 6, 33, 89 S.Ct. 1532, 1547, 23 L.Ed.2d 57 (1969).

The function of a rebuttable presumption is simply to shift the burden of proof. We do not doubt that Congress has the power to make such presumptions.

■ In the medical testimony received by the Congress there was no significant disparity as to the fact that exposure in a coal mine for a period of ten (10) years would typically present a medically identifiable case of advanced or complicated pneumoconiosis. Thus, a rebuttable presumption that after ten (10) years, as established in presumptions (1) and (2) of section 921(c), a coal miner has pneumoconiosis arising from his employment may be sustained; provided, that in the case of a coal miner with multiple employer experience of a period of ten (10) or more years, the presumption is not used as a basis for identifying one of such employers as being responsible under the Act. Such a determination involves fact questions which were not, or hardly could be, established before the Congress. Curiously, Congress did not legislate directly upon this critical selection process or establish standards for rule making, but rather, delegated the entire problem to the Secretary of Labor. 30 U.S.C. § 932(h). There is no dispute that Congress has the power to make such a delegation. Accordingly, that delegation can only be deemed proper.

■ The irrebuttable presumption contained in section 921(c)(3) not only involves a presumption of the existence of pneumoconiosis but forecloses all fact finding as to the effect of that disease upon a particular coal miner upon a clinical finding of the presence of a chronic dust disease of the lung of a coal miner. The pattern adopted in section 921(c)(3) is a departure from the overall pattern of the Act which makes the existence of both the disease and disability two (2) separate factors which must be established before liability is imposed. The statutory definition of total disability involves factual issues distinct from clinical findings. 30 U.S.C. § 902(f):

"The term 'total disability' has the meaning given it by regulations of the Secretary of Health, Education and Welfare, except that such regulations shall provide that a miner shall be

considered totally disabled *when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time.* Such regulation shall not provide more restrictive criteria than those applicable under section 223(d) of the Social Security Act." (Emphasis supplied)

To the extent that such presumption purports to making a finding of total disability in terms other than those provided by the Act as standards for total disability, it is unreasonable and arbitrary. As written, section 921(c)(3) is violative of due process in precluding the opportunity to present evidence as to the effect of a chronic dust disease upon an individual in determining whether or not he is disabled. Heiner v. Donnan, 285 U.S. 312, 329, 52 S.Ct. 358, 76 L.Ed. 772 (1932); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1973); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

■ The final rebuttable presumption provided by section 921(c)(4) differs from all other statutory presumptions of section 921(c) in that it provides the standard "and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment", then the employment experience of fifteen (15) years together with such other evidence may be used to support a rebuttable presumption. In this construction "other evidence" of total disability would by traditional rules of statutory construction imply evidence of total disability within the meaning of the Act as opposed to a finding of total disability in every case solely upon clinical evidence of a chronic dust disease. Given this construction the presumption contained in section 921(c)(4) passes constitutional muster. This presumption merely makes certain that a negative x-ray does not become conclusive evidence that there is no mine-related disability arising from pneumoconiosis.

■ *Third*, within the language of section 921(c)(4), but outside the enactment of the presumption itself, is the following:

"The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine."

We declare this limitation upon evidence to rebut the presumption that such disability is due to pneumoconiosis established by section 921(c)(4) to be invalid as arbitrary and unreasonable. Congress has made no finding that pneumoconiosis *per se* is disabling. Quite to the contrary, Congress has recognized that the disease must produce total disability or death before any operator may be held liable for benefits. 30 U.S.C. § 932. It has been judicially determined that pneumoconiosis, like any other disease, is not disabling per se. Cf. Rose v. Cohen, 406 F.2d 753 (6th Cir. 1969); Hall v. Weinberger, No. 1375 (E.D.Ky. 1973), aff'd mem. 492 F.2d 1243 (6th Cir. 1974). Since, under section 925, the operator is bound by the Secretary's finding of liability under Part B, the operator may attack the application of this limitation. To require rebuttal evidence that a coal miner did not have pneumoconiosis is irrational where liability is not predicated on the mere presence of the disease, but rather on a complicated state of the disease.

Further, the liability established under section 932(c) specifically exonerates a coal operator of liability for benefits "which did not arise, at least in part, out of employment in such mine during the period when it was operated by such operator". There is no rational basis upon which the burden of proving that the impairment "did not arise out of, or in connection with employment in a coal mine" [4] can be placed upon a spe-

4. It has been suggested that as section 932(c) provides that no benefit is payable by

any operator for death or total disability which did not arise, at least in part, out of

cific potentially liable coal mine operator. Such operator must be found liable under the Act for his mine's involvement in the disease, if any.

*Fourth,* no basis is shown, and we can find none, upon which Congress may deprive a litigant of the right to produce whatever evidence may be admissible generally in attempting to rebut a presumption without offending due process.

We are persuaded that none of our holdings in this matter affect the facial constitutionality of the Act *per se.* Excising those matters found to be constitutionally offensive, we hold that the Act is left substantially unimpaired, and no essential part of the legislative plan has been attacked successfully.[5] The Secretary shall no longer seek to apply the irrebuttable presumption made by section 921(c)(3) or to limit evidence in rebuttal to the presumption created in section 921(c)(4). All other provisions of the Act which have been considered are hereby declared to be permissible legislation under the Federal Constitution.

All matters raised in the pleadings which are outside the jurisdiction of this Court are retained for consideration by the requesting judge.

An order in conformity with this Memorandum Opinion shall be entered forthwith.

employment in a mine during the period when it was operated by such an operator, then the presumption dealt with in section 921(c)(4) could be construed, when applied to an operator's liability under Part C, to mean "employment in *its* coal mine" rather than "employment in *a* coal mine" as written. It is questionable whether this Court has the authority to so construe the plain language of an Act of Congress and, in this instance, declines to entertain the suggestion.

5. We note that a similar but in part distinguishable case involving the Act and regulations is National Independent Coal Operator's Association v. Brennan, 372 F.Supp. 16 (D.D.C.1974), affirmed without opinion, —— U.S. ——, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974). The opinion of the District of Columbia Court does not touch directly the matters found constitutionally objectionable in the instant case. The closest point of convergence is found in the *Brennan* decision's Conclusions of Law (v), 372 F.Supp. at 24:

"Pursuant to Sections 422(h) and 422(f)(2) of the Act, the Secretary of Labor properly promulgated regulations applying the Section 411 presumptions to Section 422 operator liability. Therefore, the *statutory provisions pursuant to which the Secretary's regulations were promulgated* do not and will not deprive the plaintiffs in No. 1711–73 of their property without due process of law or deny them equal protection of the law." (Emphasis added.)

This conclusion holds that sections 422(h) and (f)(2) are valid. It does not consider the validity of section 411(c) of the Act. Our consideration of these issues, therefore, is not precluded nor are the issues mooted by the decision of the Supreme Court.