James W. BEGLEY, Plaintiff,

v.

Caspar WEINBERGER, Secretary, Health, Education and Welfare, Defendant.

Stephen SPEARS, Plaintiff,

v.

Caspar WEINBERGER, Secretary, Health, Education and Welfare, Defendant.

Harry NUTTER, Plaintiff,

v.

Caspar WEINBERGER, Secretary, Health, Education and Welfare, Defendant.

Civ. A. Nos. 74–16, 74–622 and 75–58.

United States District Court, S. D. Ohio, E. D.

Aug. 18, 1975.

Verrell Dethloff, Dept. of H.E.W., Washington, D. C., William W. Milligan, U. S. Atty., Thomas D. Thompson, Asst. U. S. Atty., Columbus, Ohio, for defendant.

Irwin W. Barkan, Columbus, Ohio, Howdyshell & Dodd, New Lexington, Ohio, for plaintiff in Civ. A. No. 74–16.

Paul A. Pachuta, Reynoldsburg, Ohio, for plaintiff in Civ. A. No. 74–622.

Frederick L. Oremus, Nelsonville, Ohio, for plaintiff in Civ. A. No. 75–58.

## OPINION AND ORDER

DUNCAN, District Judge.

These three cases are appeals from final decisions of the Secretary of Health, Education and Welfare under Title IV of the Federal Coal Mine Health and Safety Act of 1969, Pub.L. 91–173, as amended by the Black Lung Benefits Act of 1972, Pub.L. 92–303, now codified at 30 U.S.C. § 901 *et seq.* [hereinafter, "the statute"]. Mr. Begley, Mr. Spears and Mr. Nutter are miners who have spent at least fifteen years in under-

ground mines, who filed claims against the United States for black lung benefits, and whose claims have been denied by the Secretary. This Court has jurisdiction to hear these appeals pursuant to 30 U.S.C. § 923(b) and 42 U.S.C. § 405(g).

The common question presented by these appeals concerns the use of evidence of total disability due to pneumoconiosis which becomes available after June 30, 1973, but before final adjudication of a claim by the Secretary. The position of the Secretary of Health, Education and Welfare in these cases is that the requisite total disability must be established as having existed on or before June 30, 1973, and that evidence which shows total disability after that date is relevant only insofar as it can be said to relate back to June 30, 1973. This Court's review of the statute leads it to conclude that the Secretary's position is not in keeping with the mandate of the statutory scheme. For the reasons set forth hereinafter, the Court has concluded that all claims submitted under the statute before July 1, 1973, must be decided by determining whether the claimant is totally disabled due to pneumoconiosis at the time his claim is finally adjudicated by the Secretary. Further, this determination must be made by application of the Part B standards of the statute and the regulations thereunder. Under this construction, the liability of the United States for black lung benefits remains, as Congress intended, a temporary matter. When all claims filed before July 1, 1973, have been finally adjudicated by the Secretary of Health, Education and Welfare, the liability of the United States under the statute will be fixed, and, upon the payment of benefits arising from valid claims, the participation of the United States as an insurer under this statute will cease. The Court will review the statute briefly, and will then turn to the arguments asserted by the parties.

## I. AN OVERVIEW OF THE STATUTE

In enacting Title IV of the Federal Coal Mine Health and Safety Act of 1969,[1] Congress established a scheme for payment of benefits to miners who are totally disabled due to chronic lung disease arising out of employment in coal mines. The amendments effected by the Black Lung Benefits Act of 1972 [2] left the major themes of the 1969 act untouched, but did modify certain key transition dates.[3] Since Congress was concerned about reports that black lung benefits were unduly difficult to obtain,[4]

---

1. Set out at 1969 U.S.Code Cong. and Admin.News, [hereinafter, U.S.News] pp. 823, 880–86.

2. Set out at 1972 U.S.News, p. 183.

3. Under the Act of 1969, the United States was to be liable for all benefits arising from claims filed on or before December 31, 1971, and liable only during 1972 for claims filed after December 31, 1971. See § 414 of the Act. The interim period as modified by the 1972 amendments is discussed in Part I(A), *infra*. See also S.Rep. No. 743, 92d Cong., 2d Sess. (1972), set out at 1972 U.S.News, pp. 2305, 2323; Joint Statement of Senators Javits and Taft, 1972 U.S.News, p. 2336; Conf.Rep. No. 1048, 92d Cong., 2d Sess. (1972), 1972 U.S.News, pp. 2338, 2340.

4. For example, Mr. Arnold Miller, now president of the United Mine Workers of Ameri-

ca, testified as follows at a 1971 Congressional hearing concerning the administration of the 1969 act:

The use of X-ray as a diagnostic tool is unreliable. It has been proved by pathology that X-ray does not always show pneumoconiosis or the disabling degree when it does show positive. The use of the simple breathing test that measures how much air a claimant can take in and exhale is almost useless in determining impairment of the lungs.

We have learned that when a claimant can get X-ray evidence in pulmonary function examinations that meets Social Security Administration requirements, they have someone to re-read the X-ray as negative.

The processing of claims by the Social Security Administration has been a farce.

it also established by the 1972 amendments an additional statutory presumption[5] favoring certain claimants, and it made clear to the Secretary of Health, Education and Welfare its intention that he establish, by regulation, still other such presumptions.[6] Congress also provided that the so-called backlog of claims—those which the Social Security Administration had denied during the first three years of the 1969 act's existence—would be re-examined by the Secretary in light of the 1972 amendments.[7]

The statute, as originally enacted and as amended, essentially imposes upon the coal mine industry, that is, the operators of coal mines, the burden of providing benefits for worthy claimants. However, Congress believed it was not fitting for the industry to be required to assume financial responsibility, retroactively, so to speak, for the claims of all miners who already had developed pneumoconiosis. Under the statute, then, the United States is liable only for certain claims filed by miners or their survivors, and coal mine operators are liable for all other claims for black lung benefits.

The statute in operation performs essentially three functions: (1) it imposes *liability* for payment of black lung benefits upon the United States and/or upon one or more coal mine operators; (2) it provides who is to adjudicate claims; and (3) it establishes standards to be used in determining the *eligibility* for benefits of miners and certain dependent survivors of miners.

### A. Liability for Benefits

The United States is liable, for the life of the claim, for all benefits arising from all claims filed on or before June 30, 1973.[8] No coal mine operator shares liability for any such claim.

*Hearings on S. 2289 and H.R. 9212 before the Subcomm. on Labor of the Senate Committee on Labor and Public Welfare,* 92d Cong., 1st and 2d Sess. at 2 (1971). The Senate Report concerning the 1972 amendments, see n. 3, *supra,* includes the following paragraph:

> Not only have the number of claims [under the 1969 act] far exceeded those earlier expectations of Congress, indicating a more widespread and more serious problem than they anticipated, but also the rate of denials—more than fifty percent nationwide, and as high as 72 percent in some states—suggests strongly that the solution has not been nearly as complete as Congress believed and expected it would be.

1972 U.S.News, pp. 2305, 2307.

5. The statutory presumptions created by the 1969 act are at 30 U.S.C. § 921(c)(1)–(3). The 1972 amendments added § 921(c)(4), set out in n. 17 and discussed in Part I(c), *infra.*

6. The Senate Report concerning the 1972 amendments, see n. 3, *supra,* includes the following language:

> [T]he backlog of claims which have been filed under these provisions cannot await the establishment of new facilities or the development of new medical procedures. They must be handled in the light of limited medical resources and techniques.

> Accordingly, the Committee expects the Secretary to adopt such interim evidentiary rules and disability evaluation criteria as will permit prompt and vigorous processing of the large backlog of claims consistent with the language and intent of these amendments.

1972 U.S.News, pp. 2305, 2322. See also 30 U.S.C. § 941, at n. 7, *infra.* The Secretary's response to the Senate Report is 20 C.F.R. § 410.490 (1974), discussed in Part I(C), *infra.*

7. 30 U.S.C. § 941 provides as follows:
The Secretary of Health, Education and Welfare shall, upon enactment of the Black Lung Benefits Act of 1972, generally disseminate to all persons who filed claims under this subchapter prior to May 19, 1972, the changes in the law created by such Act, and forthwith advise all persons whose claims have been denied for any reason or whose claims are pending, that their claims will be reviewed with respect to the provisions of the Black Lung Benefits Act of 1972.

8. 30 U.S.C. § 921(a) provides:
The Secretary shall, in accordance with the provisions of this part, and the regulations promulgated by him under this part, make payments of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of the death of any miner whose death was due

Coal mine operators bear the burden of providing benefits for worthy claimants who file on or after January 1, 1974.[9] Operators are to finance such liability through participation in approved state workmen's compensation programs, or by self-insurance techniques. If they do not pay benefits through such means, they are liable in a civil action brought by the United States.[10] The United States does not share liability for any such claim.

The United States and the coal mine industry do share liability for claims filed between June 30, 1973 and January 1, 1974.[11] With respect to such claims,

to pneumoconiosis or who at the time of his death was totally disabled by pneumoconiosis.

30 U.S.C. § 922 includes a schedule for determining the amount of benefits payable by the United States. Section 923(a) provides,

Except as otherwise provided in section 924 of this title, no payment of benefits shall be made under this part except pursuant to a claim filed therefor on or before December 31, 1973, in such manner, in such form, and containing such information, as the Secretary shall by regulation prescribe.

Section 924(b) provides, "No benefits shall be paid under this part after December 31, 1973, if the claim therefor was filed after June 30, 1973."

9. 30 U.S.C. § 931(a) provides, in part,

On and after January 1, 1974, any claim for benefits for death or total disability due to pneumoconiosis shall be filed pursuant to the applicable State workmen's compensation law, except that during any period when miners or their surviving widows, children, parents, brothers, or sisters, as the case may be, are not covered by a State workmen's compensation law which provides adequate coverage for pneumoconiosis they shall be entitled to claim benefits under this part.

Subsection 931(b) establishes standards by which the Secretary of Labor is to determine whether state workmen's compensation plans are to be approved. 30 U.S.C. § 932(a) and (b) provide that if a claim is filed concerning a mine which is located in a state which does not have an approved workmen's compensation plan, the operator of the mine is liable for benefits under certain procedures of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1970).

10. 30 U.S.C. § 934 provides as follows:

If a totally disabled miner or a widow, child, parent, brother, or sister is entitled to benefits under section 932 of this title and (1) an operator liable for such benefits has not obtained a policy or contract of insurance, or qualified as a self-insurer, as required by section 933 of this title, or such operator has not paid such benefits within a reasonable time, or (2) there is no operator who was required to secure the payment of such benefits, the Secretary shall pay such miner or such widow, child, parent, brother, or sister the benefits to which he or she is so entitled. In a case referred to in clause (1), the operator shall be liable to the United States in a civil action in an amount equal to the amount paid to such miner or his widow, child, parent, brother, or sister under this subchapter.

11. See nn. 8 and 9, *supra.* See also 30 U.S.C. § 925, which provides as follows:

(a) Notwithstanding any other provision in this subchapter, for the purpose of assuring the uninterrupted receipt of benefits by claimants at such time as responsibility for administration of the benefits program is assumed by either a State workmen's compensation agency or the Secretary of Labor, any claim for benefits under this part filed during the period from July 1, 1973 to December 31, 1973, shall be considered and determined in accordance with the procedures of this section. With respect to any such claim—

(1) Such claim shall be determined and, where appropriate under this part or section 934 of this title, benefits shall be paid with respect to such claim by the Secretary of Labor.

(2) The manner and place of filing such claim shall be in accordance with regulations issued jointly by the Secretary of Health, Education, and Welfare and the Secretary of Labor, which regulations shall provide, among other things, that such claims may be filed in district offices of the Social Security Administration and thereafter transferred to the jurisdiction of the Department of Labor for further consideration.

(3) The Secretary of Labor shall promptly notify any operator who he believes, on the basis of information contained in the claim, or any other information available to him, may be liable to pay benefits to the claimant under part C of this subchapter for any month after December 31, 1973.

(4) In determining such claims, the Secretary of Labor shall, to the extent appro-

the United States pays only benefits accruing on or before December 31, 1973;[12] the operators pay all benefits accruing on and after January 1, 1974.[13]

For most purposes, then, June 30, 1973, is the operative transition date as regards liability for benefits. The United States is liable for the payment of all benefits arising from claims filed on or before that date, and the coal mine industry is liable for all post-December 31, 1973 benefits arising from claims filed after June 30, 1973.

## B. Adjudication of Claims

Congress divided the federal government's adjudicatory role between the Secretary of Labor and the Secretary of Health, Education and Welfare.[14] The latter has jurisdiction over claims for which only the United States is potentially liable, that is, claims filed on or before June 30, 1973. The Secretary of Labor has jurisdiction over all claims for which coal mine operators are potentially liable, that is, claims filed after June 30, 1973. However, the Secretary

of Labor has no jurisdiction to adjudicate a claim filed after December 31, 1973, if the claim concerns pneumoconiosis arising from employment in a mine located in a state which has a workmen's compensation plan meeting the federal statutory standards and approved by the Secretary of Labor.[15]

## C. Eligibility Standards

The statute as originally enacted and as amended is divided into three parts. Part A includes Congress' declaration of purpose, and certain definitions. Part B, entitled "Claims for Benefits Filed on or Before December 31, 1973," includes 30 U.S.C. §§ 921–925 and concerns claims for which the United States is liable in whole or in part. Part C, entitled "Claims for Benefits After December 31, 1973," includes 30 U.S.C. §§ 931–941 and concerns claims for which only mine operators are to be liable.

While, as a general rule, the statute provides that eligibility standards for Part B and Part C claims are to be substantially the same,[16] several major dif-

---

priate, follow the procedures described in subsections (b), (c), and (d) of section 919 of Title 33.

(5) Any operator who has been notified of the pendency of a claim under paragraph 4 of this subsection shall be bound by the determination of the Secretary of Labor on such claim as if the claim had been filed pursuant to part C of this subchapter and section 932 of this title had been applicable to such operator. Nothing in this paragraph shall require any operator to pay any benefits for any months prior to January 1, 1974.

(b) The Secretary of Labor, after consultation with the Secretary of Health, Education, and Welfare, may issue such regulations as are necessary or appropriate to carry out the purpose of this section.

12. See 30 U.S.C. § 924(b), *supra*, n. 8.

13. See 30 U.S.C. § 925(a)(5), *supra*, n. 11.

14. 30 U.S.C. § 902(c) provides, "The term 'Secretary' where used in part B [§§ 921–925] means the Secretary of Health, Education, and Welfare, and where used in. part C [§§ 931–941] means the Secretary of Labor." See also 30 U.S.C. § 925(a)(1) and (2), *supra*, n. 11.

15. See n. 9, *supra*.

16. 30 U.S.C. § 921(b) provides, in part, "The Secretary [of Health, Education and Welfare] shall by regulation prescribe standards for determining for purposes of subsection (a) of this section [set out in n. 8, *supra*] whether a miner is totally disabled due to pneumoconiosis and for determining whether the death of a miner was due to pneumoconiosis." Section 902(f) provides, in part, "The term 'total disability' has the meaning given it by regulations of the Secretary of Health, Education, and Welfare . . . ." As is noted in n. 9, *supra*, 30 U.S.C. § 932 imposes liability upon mine operators for claims filed on or after January 1, 1974. Subsection (h) of § 932 provides,

The regulations of the Secretary of Health, Education, and Welfare promulgated under section 921 of this title shall also be applicable to claims under this section. The Secretary of Labor shall by regulation establish standards, which may include appropriate presumptions, for determining whether pneumoconiosis arose out of employment in a particular coal mine or mines. The Secretary may also, by regulation, establish standards for apportioning liability for benefits under this subsection among more than one operator

ferences do exist. Congress has provided, for example, that one presumption which is applicable to claims filed in whole or in part against the United States is to have limited applicability to claims filed against only coal mine operators. Thus, the statutory rebuttable presumption of disability due to pneumoconiosis, set out at 30 U.S.C. § 921(c)(4),[17] is available to all miners who filed claims against the United States on or before December 31, 1973, if the miner had fifteen years experience in underground mines on or before that date. The same provision is available to miners who file post-December 31, 1973 claims payable by mine operators, but the miner must have had the requisite fifteen years experience on or before June 30, 1971,[18] and he must file his claim within three years of his last exposed employment in a coal mine.[19]

---

where such apportionment is appropriate. 30 U.S.C. § 931(b) provides the standards which the Secretary of Labor must use in approving or disapproving state workmen's compensation plans; § 931(b)(2)(C) requires that the eligibility standards in such programs must be "substantially equivalent to section 902(f) of this title . . . ."

17. This subsection is one of the major changes effected by the 1972 amendments. It provides:

> If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

This presumption is one concerning the cause of disability; no presumption that a disability in fact exists is created by the subsection. A claimant must first show total disability due to a lung impairment before the presumption comes into play.

In *Turner Elkhorn Mining Co. v. Brennan*, 385 F.Supp. 424, 430–31 (E.D.Ky.1974), a three-judge court apparently reached a different conclusion concerning the § 921(c)(4) statutory presumption, finding that the Secretary of Labor "shall no longer seek . . . to limit evidence in rebuttal to the presumption created in section 921(c)(4)." Although § 921(c)(4) limits rebuttal of the section's presumption to evidence that "such miner does not, or did not, have pneumoconiosis" or that "his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine," the presumption does not arise under § 921(c)(4) until the miner by "other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment"; the concern of the *Turner* Court that the mine operators be able to introduce evidence that the miner is not totally disabled is not warranted, in my view, by the statute. The Supreme Court has noted probable jurisdiction in *Turner*, see 421 U.S. 1010, 95 S.Ct. 2413, 44 L.Ed.2d 678 (1975).

18. See 30 U.S.C. § 940, which provides as follows:

> The amendments made by the Black Lung Benefits Act of 1972 to part B of this subchapter shall, to the extent appropriate, also apply to this part: *Provided*, That for the purpose of determining the applicability of the presumption established by section 921(c)(4) of this title to claims filed under this part, no period of employment after June 30, 1971, shall be considered in determining whether a miner was employed at least fifteen years in one or more underground mines.

19. As is noted in n. 9, *supra*, 30 U.S.C. § 932 imposes liability upon mine operators for claims filed on or after January 1, 1974. Subsection (f)(2) provides:

> Any claim for benefits under this section in the case of a living miner filed on the basis of eligibility under section 921(c)(4)

Those Part C claimants who have the § 921(c)(4) presumption available are therefore a closed class of persons; membership in the class will decrease with the passage of time.

Nor do Part C claimants have available to them the interim presumption set out at 20 C.F.R. § 410.490(b) (1974). Although presumptions established by regulation of the Secretary of Health, Education and Welfare are generally applicable to both Part B and Part C claims,[20] the § 410.490(b) rebuttable presumption of total disability due to pneumoconiosis is by its terms an interim presumption, applicable only to claims filed on or before June 30, 1973, which are, as stated in the heading of § 410.490, "certain Part B claims."

There is also a potential for some variance in eligibility standards when claims are filed with an approved state workmen's compensation program. The statute provides that the Secretary of Labor may approve such a program, and thereby divest himself of jurisdiction to hear claims which may be filed under the state program, if the eligibility standards are "substantially equivalent to" those of the statute and the regulations promulgated by the Secretary of Health, Education and Welfare.[21] Review of the Secretary of Labor's decisions respecting this substantial equivalency test is vested in the United States Court of Appeals for the appropriate circuit.[22]

Yet another major difference between Part B claims and Part C claims is that the latter are governed by a three-year statute of limitations, while Part B claims are not.[23]

The operative transition date for determining the applicable eligibility standards for a particular claim is not the same as the operative transition date which governs liability for claim benefits. Whether a claim is a Part B claim or a Part C claim usually determines the applicable eligibility standards; the operative transition date for determining whether a claim is a Part B claim or a Part C claim is December 31, 1973. The operative transition date concerning liability is, as is discussed hereinabove, June 30, 1973. Claimants filing between June 30 and December 31, 1973, are Part B claimants, even though all benefits arising from such claims after December 31, 1973, are the financial responsibility of the coal mine industry.

## II. THE APPLICABILITY OF EVIDENCE ADDUCED AFTER JUNE 30, 1973, TO CLAIMS ADJUDICATED BY THE SECRETARY OF HEALTH, EDUCATION AND WELFARE.

Mr. Begley, Mr. Spears and Mr. Nutter all seek to invoke an interim rebuttable presumption of total disability which is set out at 20 C.F.R. § 410.490(b) (1974). This section creates, *inter alia*, a rebuttable presumption of total disability due to pneumoconiosis if certain pulmonary function test values are less than or equal to specified values set out by the Secretary of Health, Edu-

---

of this title, shall be filed within three years from the date of last exposed employment in a coal mine or, in the case of death from a respiratory or pulmonary impairment for which benefits would be payable under section 921(c)(4) of this title, incurred as the result of employment in a coal mine, shall be filed within fifteen years from the date of last exposed employment in a coal mine.

20. See n. 16, *supra*.

21. Id.

22. The last sentence of 30 U.S.C. § 931 is as follows:

The action of the Secretary in including or failing to include any State workmen's compensation law on such list shall be subject to judicial review exclusively in the United States court of appeals for the circuit in which the State is located or the United States Court of Appeals for the District of Columbia.

23. 30 U.S.C. § 932(f)(1) provides:
Any claim for benefits under this section shall be filed within three years of the discovery of total disability due to pneumoconiosis or, in the case of death due to pneumoconiosis, the date of such death.

cation and Welfare pursuant to 30 U.S. C. § 921(a) and (b). The heading of § 410.490 is as follows: "Interim adjudicatory rules for miners for certain Part B claims filed by a miner before July 1, 1973 . . . ." Since the interim standards established by the Secretary are considerably lower than his permanent pulmonary function standards, *cf.* 20 C.F.R. § 410.490(b) *with* 20 C.F.R. § 410.426(b), the plaintiff miners in the cases before this Court are anxious to establish their entitlement to the interim presumptions.

The Secretary of Health, Education and Welfare stated at 20 C.F.R. § 410.-490(a) that the purpose of the interim presumption was "to permit prompt and vigorous processing of the large backlog of claims" which was generated by restrictive application of the 1969 act. In promulgating such a regulation, the Secretary could have limited it in such a way that the interim standards applied only to pulmonary function test values taken on or before June 30, 1973. Or he might have provided that the standards would apply to test values taken after that date, if the values were found to relate back to that date. He did neither. The regulation by its terms applies to all claims filed by miners on or before June 30, 1973; it does not establish any date of onset of disability which must be met.

The Secretary argues before this Court, however, that June 30, 1973, is the onset date of disability which is applicable to *all* miners who filed claims against the United States. Relying upon 30 U.S.C. § 923(b) and 42 U.S.C. § 423(b), he asserts that if a claim was submitted on or before June 30, 1973, and evidence shows the requisite disability as occurring after that date but before final adjudication of the claim by the Secretary, the claim was not "effectively filed" under the black lung statute until after June 30, 1973. In his brief in the *Begley* case, the Secretary states:

> For example, if an individual filed an application for Black Lung benefits in April 1973 and no evidence establishes that he is totally disabled due to pneumoconiosis on or before June 30, 1973, the Social Security Administration must determine that he is not entitled to Part B benefits. Evidence that may show the individual to be totally disabled at a later date, as in October 1973, may not be considered by the Social Security Administration, since a determination that he meets the requirements for entitlement to benefits would render his application effectively filed in October 1973, after expiration of the Administration's jurisdiction. The individual's claim thus must be filed with the Department of Labor.

A comparable statement may be found in the decision of the Appeals Council in Mr. Begley's case:

> [I]t must be noted that the Social Security Administration has jurisdiction for the payment of black lung benefits in live miner claims only through June 30, 1973. Thereafter, jurisdiction passed to the Department of Labor. Thus, a live miner must not only file a valid application prior to July 1, 1973, but must also establish that he was totally disabled prior to that date.

As has been noted hereinabove, June 30, 1973, is the operative transition date which determines whether the United States or the coal mine industry is responsible for paying the bulk of the benefits arising from a given claim. December 31, 1973, is the transition date which effects the eligibility standards which a claimant must meet to prove a claim. The June 30 date also determines who will adjudicate a claim, but a claim submitted in the second half of 1973 is to be determined by the same eligibility standards which apply to claims filed before July 1, 1973. Congress recognized that the date had jurisdictional importance, and provided, at 30 U.S.C. § 925,[24] that claimants desiring to file between June 30 and Decem-

24. Set out in n. 11, *supra.*

ber 31, 1973, could do so at the district offices of the Social Security Administration even though such a claim would be adjudicated by the Secretary of Labor. It is difficult to read § 925 and conclude that "filing a claim" means anything more than submitting an appropriate piece of paper to the appropriate agency. The only "transfer of jurisdiction" contemplated by the section is that claims might be submitted in writing during the latter half of 1973 to the Secretary of Health, Education and Welfare and thereafter transferred to the Secretary of Labor, who has exclusive jurisdiction pursuant to § 925(a)(1) to decide such Part B claims.

The defendant Secretary's argument, that a claim is not "filed" for jurisdictional purposes until there is evidence of the requisite total disability, is derived from reliance upon 30 U.S.C. § 923(b), which provides, in pertinent part, that

> In carrying out the provisions of this part [*i. e.*, Part B], the Secretary [of Health, Education and Welfare] shall to the maximum extent feasible (and consistent with the provisions of this part) utilize the personnel and procedures he uses in determining entitlement to disability insurance benefit payments under [42 U.S.C. § 423].

The Secretary argues that this incorporation by reference of 42 U.S.C. § 423 [and, in particular, of 42 U.S.C. § 423(b)] in effect establishes June 30, 1973, as the onset date of disability which must be met by black lung claimants who have filed claims against the United States.

It must be borne in mind that 30 U.S. C. § 923(b) incorporates the personnel and procedures utilized by the Secretary under the Social Security Act only to the extent that such procedures are "consistent with the provisions" of Part B of the black lung statute. An examination of 42 U.S.C. § 423(b) reveals that its terms may be applied meaningfully to the Secretary's administration

of Part B claims without the result that the Secretary urges.

Three sentences comprise 42 U.S.C. § 423(b). The first is as follows:

> An application for disability insurance benefits filed before the first month in which the applicant satisfies the requirements of such benefits (as prescribed in subsection (a)(1) of this section) shall be deemed a valid application only if the applicant satisfies the requirements for such benefits before the Secretary makes a final decision on the application.

This sentence permits the applicant for disability insurance benefits to introduce evidence of disability until such time as his claim has been finally adjudicated. The provision is remedial rather than restrictive in nature, permitting a claimant the opportunity of proving his disability prior to the Secretary's final adjudication even if there was no probative evidence of the requisite disability before or at the time of the Secretary's initial determination of the claim. The similar effect of the sentence upon the Secretary's adjudication of black lung claims is to require that he receive evidence of disability until final adjudication, even if no evidence exists which tends to show that the miner was disabled at the time he filed his claim.

The second sentence of 42 U.S.C. § 423(b) is as follows:

> If, upon final decision by the Secretary, or decision upon judicial review thereof, such applicant is found to satisfy such requirements, the application shall be deemed to have been filed in such first month.

This provision has applicability to black lung claims insofar as it limits benefits to those benefits accruing from the first month concerning which there is evidence of the requisite disability. Thus, if a miner files a claim on June 30, 1973, and the first evidence of the requisite disability concerns August of 1973, the miner is entitled to benefits begin-

ning in August, not June. So construed, the second sentence of 42 U.S.C. § 423(b) augments the provisions of Part B of the black lung statute without modifying the jurisdictional standards set out, on the face of the statute, at 30 U. S.C. § 925.

The third sentence of 42 U.S.C. § 423(b) is as follows:

An individual who would have been entitled to a disability insurance benefit for any month had he filed application therefor before the end of such month shall be entitled to such benefit for such month if such application is filed before the end of the 12th month immediately succeeding such month.

This sentence establishes a one-year statute of limitations upon the availability of retroactive disability insurance benefits. If, for example, an insured individual suffers the requisite disability on the first day of 1970, but does not file his claim until the first day of 1972, he is entitled only to benefits accruing after the first day of 1971. This provi-

sion augments those found in Part B of the black lung statute, and would therefore appear to be applicable to Part B claims.[25]

The Secretary's reliance upon the second sentence of 42 U.S.C. § 423(b) in the context of claims for black lung benefits is, in the judgment of this Court, simply misplaced. The effect of § 423(b) upon Social Security Act claims is, on occasion, to limit the availability of benefits; this is because a section of the Social Security Act which is not incorporated by reference into the black lung statute, 42 U.S.C. § 416,[26] establishes an onset of disability deadline which is related to the length of time which has elapsed since the claimant's last covered employment. *See, e. g., Henry v. Gardner,* 381 F.2d 191, 195 (6th Cir.), *cert. denied* 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967); *Boles v. Celebrezze,* 210 F.Supp. 856, 857 (W.D.Va. 1962). No counterpart to the onset of disability provision at 42 U.S.C. § 416 exists in the black lung statute.

25. But see 20 C.F.R. § 410.226(c) (1974), which provides:
 *Retroactive life of claims.* Except in the case of a claim for benefits as a surviving child (see § 410.212) a claim for benefits has no retroactive effect. (See, however, § 410.230.) Generally, a claim for benefits for a surviving child is effective (depending on the first month of eligibility) for up to 12 months preceding the month in which such claim is filed. However, if such claim is filed before December 1972, such claim may be effective retroactively (depending on the first month of eligibility) to December 1969.

26. 42 U.S.C. § 416(i)(2)(C) provides:
 A period of disability shall begin—
 (i) on the day the disability began, but only if the individual satisfies the requirements of paragraph (3) on such day; or
 (ii) if such individual does not satisfy the requirements of paragraph (3) on such day, then on the first day of the first quarter thereafter in which he satisfies such requirements.
 42 U.S.C. § 416(i)(2)(G)(3) provides:
 . The requirements referred to in clauses (i) and (ii) of paragraph (2)(C) of this

subsection are satisfied by an individual with respect to any quarter only if—
 (A) he would have been a fully insured individual (as defined in section 414 of this title) had he attained age 62 and filed application for benefits under section 402(a) of this title on the first day of such quarter; and
 (B)(i) he had not less than twenty quarters of coverage during the forty-quarter period which ends with such quarter, or
 (ii) if such quarter ends before he attains (or would attain) age 31, not less than one-half (and not less than 6) of the quarters during the period ending with such quarter and beginning after he attained the age of 21 were quarters of coverage, or (if the number of quarters in such period is less than 12) not less than 6 of the quarters in the 12-quarter period ending with such quarter were quarters of coverage;
except that the provisions of subparagraph (B) of this paragraph shall not apply in the case of an individual who is blind (within the meaning of 'blindness' as defined in paragraph (1)).

## III. CONCLUSION

The jurisdiction of the Secretary of Health, Education and Welfare to adjudicate claims filed against the United States under the black lung statute, 30 U.S.C. § 901 *et seq.*, does not depend upon the vagaries of proof in each case. He has exclusive jurisdiction to adjudicate all claims submitted before July 1, 1973, and he must consider all probative evidence offered by a claimant prior to final adjudication. In determining the validity of such claims, the Secretary must apply the Part B standards of eligibility in weighing any evidence submitted prior to such final determination.

The interim presumptive criteria promulgated by the Secretary and set out at 20 C.F.R. § 410.490(b) are by the terms of the section applicable to all Part B claims filed before July 1, 1973. There being no onset of disability provision in § 410.490(b), this presumption, like others created by the statute and the regulations, is applicable to evidence submitted before final adjudication by the Secretary of such Part B claims.

Although Mr. Begley, Mr. Spears and Mr. Nutter each had pre-June 30, 1973 pulmonary function readings which did not meet the interim criteria at § 410.490(b), each also had readings which did meet these criteria and which were made a part of the record before the Secretary's final decision was rendered. These miners are therefore entitled to the § 410.490(b) rebuttable presumption of total disability due to pneumoconiosis. Since the Secretary did not afford these plaintiffs this presumption, these cases must be remanded.

For the reasons set forth hereinabove, these cases are remanded to the Secretary of Health, Education and Welfare for proceedings consistent with the views expressed in this opinion.

So ordered.